# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KENIKA M. THREATT,         )
                                        )
              Plaintiff,       )
                                          )
                v.            )
                                        )    No. 06 C 3944
ALPHONSO R. JACKSON, Secretary,   )
U.S. Department of Housing & Urban   )
Development,                     )
                                        )
             Defendant.    )

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Alphonso R. Jackson's Motion for Summary Judgment. Jackson, Secretary of the United States Department of Housing & Urban Development ("HUD"), argues that Plaintiff Kenika Threatt's employment discrimination and retaliation claims fail because they are untimely, unexhausted and unsupported. For the reasons set forth below, we grant HUD's motion.[1]

---

[1] On November 6, 2007, Threatt filed a Motion to Strike And/Or Deny Defendant's Motion (Docket No. 92), arguing that HUD's summary judgment motion was premature and in violation of Local Rule 16.1. Threatt's motion lacks merit and is hereby denied.

# SUMMARY OF THE FACTS[2,3]

Plaintiff Kenika Threatt was formerly employed by HUD as an economic development

specialist based out of its Chicago regional office. (Def.'s Facts ¶ 3.) On June 19, 2002, Threatt

---

[2] Unless otherwise noted, the facts described herein are undisputed. We primarily rely on the submitted documentary evidence.

[3] Local Rule 56.1 states that the non-moving party must, in addition to a supporting memorandum of law and any affidavits and other materials referred to in Fed. R. Civ. P. 56(e), submit a concise response to the movant's statement of material facts. L.R. 56.1(b). This response must include numbered paragraphs with a brief summary of the paragraph to which it is directed. L.R. 56.1(b)(3)(A). In the case of any disagreement, the non-moving party's submission must also make "specific references to the affidavits, parts of the record, and other materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(b)(3)(A); *see, e.g.*, *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). "[S]pecific reference means including proper Bluebook citations to exact pieces of the record that support the factual contention contained in the paragraph." *Malec*, 191 F.R.D. at 583.

Threatt's response to HUD's Local Rule 56.1 Statement of Material Facts fails to comply with these requirements. Among other things, Threatt repeatedly refers us to "Plaintiff's Statement of Material Facts in Dispute" in lieu of providing a specific response to various factual statements. (*See, e.g.*, Pl.'s Resp. to Def.'s Facts ¶¶ 5, 7, 12-13, 16-17.) It is wholly improper to simply refer us to a four-page, unauthorized – not to mention unorganized – "Statement of Material Facts in Dispute." Moreover, the citations to record evidence contained therein are confusing. (*See, e.g.*, Pl.'s St. of Material Facts in Dispute ¶ 5 (instructing us to review "*Id.*, Exh. 1, para. 14-15, p.4," but where "*Id.*" is unclear).) The value of these citations is further diminished by Threatt's failure to attach all relevant documents in support of her position. Rather than include pertinent documents with her response, Threatt directs us to exhibits attached to other previously-filed briefs scattered throughout the docket. (*See, e.g.*, Pl.'s St. of Material Facts in Dispute ¶ 5 (instructing us to obtain and review "Dkt. 44, para. 17-18, p.8"), ¶ 7 at 10 (instructing us to obtain and review "Dkt. 23, Exh. 1").) Accordingly, we disregard Threatt's "Statement of Material Facts in Dispute" and other inappropriate statements, including all non-material facts or material facts that are not supported by admissible evidence. *See, e.g., Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (noting that the court need not scour the record "for facts that a party could have easily identified with greater particularity"). Similarly, because "mere allegations of a complaint are not evidence," *Tibbs v. City of Chi.*, 469 F.3d 661, 663 n.2 (7th Cir. 2006), we cannot consider Threatt's Second Amended Complaint as such for purposes of avoiding summary judgment. (*See, e.g.*, Pl.'s St. of Material Facts in Dispute ¶ 5 (instructing us to consider certain paragraphs of the document appearing as "Dkt. 44," which is the Second Amended Complaint); *see also id.* ¶ 6.) We will, however, consider the supporting documents submitted by both parties.

contacted a HUD equal employment opportunity counselor, claiming that she had been subjected to sex discrimination and harassment as evidenced by a number of incidents. Following this initial pre-complaint counseling, she filed a formal complaint with HUD's Office of Departmental Equal Employment Opportunity (DEEO) on August 6, 2002. (*Id.* ¶ 5.) Threatt alleged discriminatory conduct on the part of Victor Thornton, Jeff Ruster, Mark Walling, and Ray Willis. (*Id.*) On December 23, 2004, the DEEO issued its final decision, concluding that Threatt had not proven her allegations of unlawful discrimination. (*Id.* ¶ 6; Def.'s MSJ, Ex. 2.)[4]

HUD apparently reorganized during 2004, resulting in a slightly different supervisory structure for Threatt. (Pl.'s Resp. to Def.'s Facts ¶ 8; Pl.'s Resp., Ex. 1.) Alice Hamilton and Ray Willis became Threatt's first- and second-level supervisors, respectively. (Def.'s Facts ¶ 8.)

Beginning August 3, 2004, Threatt and two male HUD employees attended a training session in Indianapolis, Indiana. On July 30, 2004, their supervisor, Ray Willis, informed them by email that they were expected to work the morning of August 2 prior to traveling to Indianapolis that afternoon. (Def.'s MSJ, Ex. 10, Willis 7/30/04 email.) None of them did so and, upon their return, Willis asked each to submit three hours of leave time to cover their August 2 absences. (Def.'s MSJ, Ex. 7, Hamilton Aff. at 2; Def.'s MSJ, Ex. 8, Willis Aff. at 2.) The two male employees who attended the training complied and requested leave time. (Def.'s MSJ, Ex. 8, Willis Aff. at 2.) Neither employee had prior EEO activity. (Def.'s MSJ, Ex. 11.)

Threatt had previously contacted Vernita Wood, the timekeeper, and requested to use an

---

[4] As discussed in our March 7, 2007 opinion (Docket No. 28), the allegations included in Threatt's August 6, 2002 DEEO complaint are not before us because Threatt failed to file suit within 90 days of receipt of the DEEO's final agency decision dated December 23, 2004.

hour of annual leave for that time. (Def.'s MSJ, Ex. 9, Wood Aff. at 1.) Because Threatt had no annual or sick time available, Wood charged her with one hour of leave without pay. (*Id.*) While Threatt alleges that Hamilton, her first-line supervisor, approved two additional hours of leave for the morning of August 2, Hamilton does not remember Threatt requesting such leave time or allowing it. (Def.'s MSJ, Ex. 7, Hamilton Aff. at 2.) On approximately August 10, Willis met with Threatt and asked that she request an additional two hours of leave, which she refused. (Def.'s MSJ, Ex. 10, Willis 8/11/04 email; Def.'s MSJ, Ex. 8, Willis Aff. at 2.) Willis then charged Threatt with two hours of AWOL, or absence without leave. (Def.'s MSJ, Ex. 10, Willis 8/11/04 email; Def.'s MSJ, Ex. 8, Willis Aff. at 2.) Several weeks later, Threatt requested three hours of leave, and Hamilton approved that time off without charging Threatt's leave account, effectively negating the AWOL charge. (Def.'s MSJ, Ex. 7, Hamilton Aff. at 3.)

After completing the DEEO's informal pre-complaint procedure, Threatt filed a second formal complaint with the DEEO on October 1, 2004 (the "2004 DEEO Complaint"), asserting that Willis engaged in multiple acts of discrimination. (Def.'s Facts ¶ 9; Pl.'s Resp. to Def.'s Facts ¶ 9; *see* Def.'s MSJ, Ex. 4.) On October 29, 2004, the DEEO informed Threatt that it accepted two of her six allegations for further investigation. (Def.'s Facts ¶¶ 9-10; Def.'s MSJ, Ex. 4.) Although the DEEO accepted the third and fourth claims set out in the 2004 DEEO Complaint, specific to the AWOL time charged against Threatt, it dismissed the first and second claims as untimely. (Def.'s Facts ¶ 10.) The DEEO also dismissed the fifth and sixth claims for failure to state a claim, pursuant to 29 C.F.R. § 1614.107(a)(1). (*Id.*; Def.'s MSJ, Ex. 4 at 2-3.) On March 1, 2006, the DEEO issued its final decision on the 2004 DEEO Complaint, finding that Threatt failed to establish any connection between her August 2002 EEO activity and the

August 2004 AWOL charge.  (Def.'s Facts ¶ 15; Def.'s MSJ, Ex. 12 at 4.)

In June of 2006, Hamilton issued Threatt an evaluation indicating that her performance was "unacceptable" in several ways, further described in a separate document entitled "Justification for EPPES Rating for Period Ending January 31, 2006."  (Def.'s MSJ, Exs. 13-14.) At the same time, on June 21, 2006, HUD placed Threatt on an 90-day opportunity-to-improve plan ("OIP").  (Def.'s MSJ, Ex. 15.)  On January 12, 2007, Hamilton issued Threatt a Notice of Proposal to Remove, describing Threatt's alleged ongoing deficiencies and options for responding to the notice.  (Def.'s MSJ, Ex. 16.)  The notice sets forth numerous assignments Threatt failed to complete during the OIP period, including generation of letters and reports and certain computer training.  (*Id.*)  On May 11, 2007, Ronald Herbert – Director of HUD's Office of Field Management and Willis' immediate supervisor – informed Threatt that she would be removed from service effective May 15.  (Def.'s MSJ, Ex. 19 at 5.)

Prior to her termination, Threatt filed a third formal EEO complaint on March 26, 2007 (the "2007 DEEO Complaint"), asserting three claims against HUD relating to her impending removal and performance reviews.  (Def.'s MSJ, Exs. 17-18.)  On May 3, 2007, the DEEO notified Threatt that it accepted two of the three charges for investigation, but dismissed her claim that her supervisors discriminated and retaliated against her by improperly evaluating her work from 2003 through 2006.  (Def.'s MSJ, Ex. 18.)  On June 12, 2007, Threatt requested that the DEEO amend her complaint to include a claim based on her May 15 termination.  (Def.'s MSJ, Ex. 20.)  Threatt simultaneously asked the DEEO to dismiss (or at least stay investigation of) the amended portion of the claim "since it is being reviewed by the federal court."  (*Id.;* Def.'s Facts ¶ 22.)  The DEEO acquiesced to this request, amending Threatt's complaint

pursuant to 29 C.F.R. § 1614.106(d) and staying its investigation. (Def.'s MSJ, Ex. 21; Def.'s Facts ¶ 22.)

On July 11, Threatt asked the DEEO to dismiss the 2007 DEEO Complaint pursuant to 29 C.F.R. § 1614.107(a)(3) because we had permitted her to amend her lawsuit to include the termination claim. (Def.'s MSJ, Ex. 22; Def.'s Facts ¶ 23.) The DEEO issued its final decision on September 27, 2007, dismissing the 2007 DEEO Complaint entirely because Threatt's three pending claims are also part of this lawsuit. (Def.'s MSJ, Ex. 23; Def.'s Facts ¶ 23.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

*A.      Exhaustion of Termination Claim*

Before proceeding to the merits of the present motion, we address HUD's contention that Threatt failed to exhaust the termination claim contained in her 2007 DEEO Complaint. (Def.'s MSJ at 9-10, 14.) Although Threatt inexplicably failed to respond to this argument in her opposition brief,[5] we find as a matter of law that she sufficiently exhausted the 2007 DEEO Complaint.

HUD correctly states that "[f]ederal employees asserting Title VII claims must timely exhaust their administrative remedies before they may assert their claims in a lawsuit." *Kruger v. Principi*, 420 F. Supp. 2d 896, 906 (N.D. Ill. 2006); *Gagnon v. Potter*, No. 05-324, 2006 WL 2051730, at *2 (N.D. Ind. July 19, 2006); *McSwain v. Runyon*, 990 F. Supp. 1001, 1003 (N.D. Ill. 1998); *see, e.g., More v. Snow*, 480 F. Supp. 2d 257, 269-70 (D.D.C. 2007) (describing exhaustion procedures and purposes); *King v. Gonzalez*, No. 03-126, 2005 WL 1175135, at *9 (N.D. Ind. May 5, 2005) (same). For federal employees, like Threatt, the process begins informally by contacting an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). After engaging in counseling sessions, including a final interview, the counseler then informs the aggrieved employee in writing of the right to file a formal discrimination complaint. *Id.* § 1614.105(d). Any such formal complaint must be filed by the aggrieved employee within 15 days of receipt of the counselor's above-

---

[5] Indeed, Threatt neglected to reiterate her previous arguments on this subject, asserted in briefing on her motion for leave to file an amended complaint, or to direct our attention to Docket No. 85 ("Plaintiff's Addressing Substantive Legal Issues"), in which she attaches the September 27 letter from the DEEO.

described notice. *Id.* § 1614.106(b). Generally, the relevant EEO agency must "conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint." *Id.* § 1614.106(e)(2). The complainant is free to amend the EEO complaint "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." *Id.* § 1614.106(d). In that event, the agency "shall complete its investigation within the earlier of 180 days after the last amendment . . . or 360 days after the filing of the original complaint." *Id.* § 1614.106(e)(2). Title VII then permits aggrieved employees to file civil actions "[w]ithin 90 days of receipt of notice of final action taken by a department [or] agency," or 180 days after the employee's filing of the initial charge. 42 U.S.C. § 2000e-16(c); *see also* 29 C.F.R. § 1614.407(a), (b). Working together, the statute and regulations give the administrative agency up to 180 days to complete its investigation of the employee's claims and attempt conciliation, at which time the employee may take the matter to federal court.

HUD does not dispute that Threatt promptly participated in the informal counseling procedure and timely filed the 2007 DEEO Complaint on March 26, 2007, after receiving the Notice of Proposal to Remove dated January 12, 2007. Rather, HUD argues that Threatt abandoned her third charge by repeatedly requesting, and ultimately obtaining, its dismissal under 29 C.F.R. § 1614.107(a)(3) because she alleged identical claims in this lawsuit. (Def.'s MSJ at 9-10, 14.) To recap critical dates, Threatt asked the DEEO on June 12, 2007 to amend her administrative charge to include the termination claim and to dismiss her complaint in light of the ongoing litigation. Threatt filed a Second Amended Complaint in this lawsuit on July 18, 2007 to add the same termination claim. She again asked the DEEO to dismiss her complaint on

July 11, 2007, and the DEEO complied on September 27, 2007.

The relevant regulations provide, in pertinent part, that "the agency shall dismiss an entire complaint . . . that is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint." 29 C.F.R. § 1614.107(a)(3). Accordingly, the DEEO is *required* to dismiss an administrative complaint under such circumstances. In this case, more than 180 days had passed since Threatt's filing of the 2007 DEEO Complaint when the DEEO dismissed it on September 27.[6] Further, Threatt's July 18 Second Amended Complaint is plainly based on her 2007 DEEO Complaint and the allegations contained therein, and HUD does not argue otherwise. As a result, the DEEO was authorized – indeed, obligated – to dismiss Threatt's entire charge. 29 C.F.R. § 1614.107(a)(3). Although not a decision on the merits, the DEEO's September 27 is a final agency action, triggering Threatt's right to sue. 42 U.S.C. § 2000e-16(c); *see also Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) (noting that "exhaustion" means that complainant cannot sue "until he has received a right-to-sue letter from the EEOC, signifying that the EEOC will not provide him with any relief"); *Robbins v. Faust*, 41 F.3d 1195, 1198-99

---

[6] We acknowledge that 180 days had not passed by September 27 from Threatt's June 12 *amendment* of 2007 DEEO Complaint to include her May 15 termination. *Compare* 29 C.F.R. § 1614.106(e)(2) (suggesting that amendment initiates new 180-day period for agency investigation of newly-added claim) *with* 29 C.F.R. § 1614.107(a)(3) (requiring dismissal of "entire complaint" without mention of amendment). Nonetheless, because the facts surrounding Threatt's May 2007 termination are closely related to and stem from her January 2007 Notice of Proposal to Remove challenged in the original 2007 DEEO Complaint, we will not bar them from further consideration. 29 C.F.R. § 1614.106(d) (permitting amendment of EEO complaint to "include issues of claims like or related to those raised in the complaint"); *see also Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (allowing plaintiff to assert claims in lawsuit that are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations") (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)).

(7th Cir. 1994) (holding that agency action under predecessor to 29 C.F.R. § 1614.107(a)(3) was a final agency decision triggering Title VII's time bar even though not a decision on the merits).

The fact that Threatt had not received the DEEO's final agency decision when she amended her federal complaint on July 18, 2007 does not concern us, as the subsequent receipt of the September 27 letter perfects her exhaustion and cures the deficiency. *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991) (concluding that receipt of right-to-sue letter after complaint was filed and before dismissal effectively cured the deficiency); *see Worth v. Tyler*, 276 F.3d 249, 259-60 (7th Cir. 2001); *Simmons v. Vill. of Willow Springs*, No. 02-9379, 2004 WL 2036405, at *8 (N.D. Ill. Sept. 10, 2004); *Toney v. Rosewood Care Ctr., Inc.*, No. 98-693, 2001 WL 1105127, at *3 (N.D. Ill. Sept. 20, 2001). We further observe that, even if the DEEO had never issued the September 27 letter, Threatt could have proceeded with a federal lawsuit on her termination claim as of September 22, 2007, at which point 180 days had passed from her initial filing. 42 U.S.C. § 2000e-16(c); *see, e.g.*, *Mays v. Principi*, 301 F.3d 866, 868 (7th Cir. 2002) (concluding that plaintiff's "suit was not premature, even though filed before her administrative complaint was denied, because she had waited the required 180 days").

HUD argues that, despite Threatt's receipt of the September 27 agency decision, she abandoned her termination claim before the DEEO by requesting that the agency dismiss the complaint. (Def.'s MSJ at 9-10, 14.) While we agree that Threatt's maneuvers could be considered an attempt to circumvent the necessary administrative review process, they could also be construed as an effort to both comply with administrative requirements and yet proceed expeditiously with this litigation. Given the unique circumstances and posture of this case, we give Threatt the benefit of the doubt. Regardless, the EEOC was authorized to dismiss the

complaint, whether or not Threatt requested it. We note, too, that HUD does not claim that

Threatt refused to cooperate with, or otherwise obstructed, the DEEO's investigation. *See Hill,*

352 F.3d at 1143, 1146 (finding that plaintiff's exhaustion "problem was not that he jumped the

gun but that he refused to cooperate with the EEOC").

Moreover, unlike the cases cited by HUD, Threatt did not elect one forum for

administrative review and then change her mind, attempting to initiate proceedings before

another body out of turn. In *McGinty v. U.S. Department of the Army,* for example, the Seventh

Circuit affirmed dismissal of plaintiff's two lawsuits where she committed multiple blunders not

present here. 900 F.2d 1114, 1117 (7th Cir. 1990). There, the plaintiff filed a formal

administrative complaint alleging age discrimination in the Army's denial of her desired

promotion. *Id.* at 1115. The Army concluded that she had not been subject to discrimination

and informed her that she could appeal to the EEOC within 20 calendar days. *Id.* She neglected

to do so and instead filed a lawsuit, which was dismissed given her failure to appeal to the

EEOC. *Id.* With that litigation pending, she appealed the Army's final decision to the EEOC, as

originally instructed, but the EEOC dismissed the appeal as untimely. *Id.* at 1116. Her second

lawsuit failed because she had not appealed to the EEOC within the mandated 20-day time

frame. *Id.* In *McGinty*, as in *Fleming v. Potter* also cited by HUD, the plaintiff elected to bring

her complaint to the EEOC rather than proceeding directly with litigation and, having made that

choice, was required to complete the administrative review. *McGinty*, 900 F.2d at 1116-17

(holding that after choosing administrative procedure pursuant to 29 U.S.C. § 633(a)(c), plaintiff

cannot fail to exhaust and switch to § 633(a)(d) litigation); *Fleming,* No. 04-444, 2005 WL

1185806, at *5 (E.D. Va. May 17, 2005) (holding that plaintiff could not abandon administrative

review where he elected to appeal Postal Service EEO's final decision to the EEOC rather than file in district court). These cases would apply if, hypothetically, Threatt had filed an appeal to the Merit Systems Protection Board ("MSPB")[7] and then subsequently withdrawn that appeal to pursue this litigation. (Def.'s MSJ, Ex. 22) (informing Threatt that she can appeal the DEEO final action to the MSPB pursuant to 29 C.F.R. § 1614.302(a)(3) *or* file an action in district court pursuant to 29 C.F.R. § 1614.310(a)). Because that situation is not before us, HUD's cases are not particularly instructive. For the above reasons, we shall consider Threatt's termination claim on the merits.

  *B. Count I: Sex Discrimination*

  Title VII forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a Title VII claim either by offering direct proof of discrimination, or by presenting evidence indirectly under the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *see also Lewis v. City of Chi.*, 496 F.3d 645, 650-51 (7th Cir. 2007); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). Threatt's brief does not clarify which method she seeks to utilize for her sex discrimination claim and thus, we will assess the viability of her claim under both methods. Under either method, summary judgment is inappropriate if Threatt proffers evidence from which an inference of intentional discrimination can be drawn.

---

  [7] The MSPB is "an independent quasi-judicial federal administrative agency" authorized to "review civil service decisions made by various governmental agencies regarding the employees of those agencies." *Davis v. Potter*, 301 F. Supp. 2d 850, 857 (N.D. Ill. 2004); *see also Chaney v. Rubin*, 986 F. Supp. 516, 520 (N.D. Ill. 1997).

*See Fuka v. Thompson Cons. Elecs.*, 82 F.3d 1397, 1402-03 (7th Cir. 1996).

### 1.    Direct Method

Under the direct method, a plaintiff may show through either direct or circumstantial evidence that "the employer's decision to take the adverse job action was motivated by an impermissible purpose, such as her [sex]." *Haywood*, 323 F.3d at 529; *see Phelan v. Cook Cty.*, 463 F.3d 773, 779-80 (7th Cir. 2006). Direct evidence of discrimination is evidence that would show a clear acknowledgment of discriminatory intent by the employer. *See, e.g., Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (explaining that direct evidence is an "outright admission by the decisionmaker that the challenged action was undertaken because of the [employee's] race"). "Direct proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion," however, and may include "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Luks v. Baxter Healthcare Corp.*, 67 F.3d 1049, 1052 (7th Cir. 2006). Thus, Threatt may succeed under the direct method by presenting circumstantial evidence which provides a "convincing mosaic of discrimination," *Troupe v. May Department Stores Company*, 20 F.3d 734, 737 (7th Cir. 1994), from which a jury may reasonably infer intentional discrimination. *Luks*, 67 F.3d at 1053 (observing that even if evidence is not a "convincingly rich mosaic . . . it is enough that the circumstances give rise to a reasonable and straightforward inference" of discrimination); *see also Lewis*, 496 F.3d at 650-51; *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903-04 (7th Cir. 2006); *Volovsek v. Wis. Dep't of Agric., Trade & Cons. Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). In *Volovsek*, the Seventh Circuit explained that such circumstantial evidence typically includes:

(1) suspicious timing, ambiguous statements, behavior towards other employees and so on; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently; or (3) evidence that the employee was [adequately performing] the [job in question] and [terminated] and the employer's reason for the difference in treatment is a pretext for discrimination.

*Id.* at 689-90 (citing *Troupe*, 20 F.3d at 736). These three forms of circumstantial evidence can be used independently or in the aggregate to "provide a basis for drawing an inference of intentional discrimination." *Troupe*, 20 F.3d at 736.

Here, Threatt has failed to provide sufficient evidence – direct or circumstantial – leading to an inference that HUD committed adverse actions motivated by her sex. At the outset, we agree with HUD that not all of Threatt's complaints can be considered in evaluating her claims. For example, the DEEO dismissed four of the six allegations in her 2004 DEEO Complaint because they were either untimely or did not inflict harm sufficient to state a claim against HUD. (Def.'s MSJ, Ex. 4 at 2-3.) As previously noted, the allegations included in Threatt's August 6, 2002 DEEO complaint are also not before us. Other allegations described in Threatt's affidavit[8] – including Willis' 2003 removal of telework, comment about Threatt's post-pregnancy weight loss, unspecified "harassing" dialogue, efforts to prevent her transfer and suspension of Threatt[9]

---

[8] Threatt's affidavit is not particularly useful, as it does not include much specific information, such as dates. (We will assume that the events described are in chronological order.) The affidavit also includes certain information that would seem to be outside her personal knowledge. (Pl.'s Resp., Threatt Aff. at 3) (stating that male coworkers received positive evaluations without providing any basis for such knowledge). Nonetheless, we will consider the admissible portions of this affidavit and will construe all properly-presented evidence in Threatt's favor.

[9] Based on the record before us, it appears that Threatt was suspended in June 2006 for refusing to comply with an order given by her supervisor, Hamilton. (Def.'s Reply, Ex. 1; Pl.'s Resp., Ex. 3.) Although she grieved this discipline pursuant to the applicable collective bargaining agreement, she did not timely raise this issue in any DEEO proceeding. We add only that the arbitrator's decision on that grievance is of little use to us because: (a) the parties neither

– were not raised before, or accepted by, the DEEO for investigation.[10]  We will consider the

AWOL allegations of her 2004 DEEO Complaint[11] and the termination claims of her 2007

DEEO Complaint.

### a. AWOL Claims

As HUD correctly argues, the AWOL allegations (along with Threatt's complaints of

unfair performance reviews from 2003 through 2006) do not constitute adverse employment

actions.  "Title VII does not forbid every act of invidious discrimination that an employer might

commit against an employee; the act must be 'with respect to [the employee's] compensation,

terms, conditions, or privileges of employment.'" *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742,

743-44 (7th Cir. 2002) (quoting 42 U.S.C. § 2000e-2(a)(1)); *see also Griffin v. Potter*, 356 F.3d

824, 829 (7th Cir. 2004); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).  Because

only *materially* adverse employment actions trigger liability, Title VII plaintiffs must

demonstrate that they suffered "'a significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits.'"  *Herrnreiter*, 315 F.3d at 744 (quoting *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998)); *Griffin*, 356 F.3d at

829; *Oest*, 240 F.3d at 613; *see also Casas v. Gonzales*, No. 04-5296, 2006 WL 2794955, at *9

---

explained the facts or relevance of the suspension, nor provided the entire decision; (b) they did
not submit the evidence that was presented to the arbitrator that enabled him to reach his
conclusions; and (c) ultimately, his conclusions are not themselves evidence relevant to this case.

[10] In addition, the majority of these claims would not constitute actionable "adverse
employment actions" for Title VII purposes, as discussed below.

[11] We note that Threatt checked only the "reprisal" box on her 2004 DEEO Complaint
concerning the AWOL incident.  To the extent that Threatt contends the AWOL incident is part
of her sex discrimination claim, however, we analyze it herein.

(N.D. Ill. Sept. 28, 2006). With these principles in mind, we conclude that Threatt's claims regarding the two hours of AWOL time charged against her in August 2004 do not rise to the level of adverse employment actions. Moreover, Threatt does not dispute that she recouped those hours within a few weeks of the incident, when Hamilton permitted her to take three hours of leave without being charged. (Def.'s MSJ, Ex. 7, Hamilton Aff. at 3; Second Am. Compl. ¶ 18.) Threatt presented no evidence suggesting that the temporary loss of two hours of work (and thus, two hours of pay) constitutes a significant change in her status or benefits. *See, e.g.*, *Casas*, 2006 WL 2794955, at *9 (finding no adverse employment action where employer originally charged several days out of office as annual or compensatory time but later reclassified that time as sick days).

Finally, even if the AWOL complaint was actionable, Threatt has not presented any evidence raising a reasonable inference that Willis' decision to charge her two hours of AWOL was motivated by her sex. Although she alleges that similarly-situated male employees were not charged with AWOL for this incident, *see* Second Amended Complaint ¶ 18, she has not offered any evidence establishing the existence of such comparators or contradicting HUD's explanation that her male counterparts used their available leave time to cover their August 2, 2004 absences, as Willis had also requested of Threatt. Although Threatt states in her affidavit that Willis made a few comments potentially of a sexual nature, she presented no further evidence suggesting that he made these or any similar comments at any time relevant to the AWOL charge.[12] In sum, we

---

[12] For example, Threatt's bare-bones affidavit provides that Willis whispered a comment in her ear, presumably in early 2002, regarding her intended marriage. (Pl.'s Resp., Threatt Aff. at 2.) Willis also ogled Threatt and commented on her post-pregnancy weight loss upon her return from maternity leave in March 2003. (*Id.*) While Threatt further states that Willis would "pop up in [her] cubicle, startle [her], and engage in dialogue that was harassing," she failed to

-17-

conclude that Threatt's sex discrimination claim cannot stand on the AWOL incident.

*b.*     *Termination Claims*

Unlike the AWOL charge, Threatt's termination plainly rises to the level of an adverse employment action. The question thus becomes whether Threatt, using the direct method, has raised a genuine issue of material fact that HUD terminated her employment because she is a woman. Threatt challenges various circumstances leading up to her termination, including HUD's compliance with relevant regulations and alleged refusal to respond to her requests for documentation during the removal proceedings. (Pl.'s Resp. at 2, 9.) She also claims that her termination was unwarranted, in part because her performance evaluations from 2003 through 2006 were tainted by Willis.[13] Even assuming that Threatt's allegations of procedural irregularities are true – and we conclude below in Section D.1 that they are largely unsupported – Threatt has failed to provide sufficient direct or circumstantial evidence from which a jury could reasonably infer that her termination stemmed from discriminatory animus on the basis of her sex. *See Volovsek*, 344 F.3d at 689-90 (stating that circumstantial evidence for direct method may include, among other things, "suspicious timing, ambiguous statements, behavior towards other employees and so on").

Threatt offers no traditional "direct" evidence, such as a near-admission by her supervisors or some other "smoking gun"-type of proof, that the events leading to and

---

describe the approximate date(s) of these conversations, the number of such instances, or the nature of the comments. (*Id.* at 3.)

[13] She relatedly claims, without citing or submitting any factual support, that Willis "got Hamilton to continue this unlawful harassment and materially adverse conduct." (Pl.s' Resp. at 9.)

culminating in her termination were motivated by sex discrimination. *See, e.g.*, *Luks*, 467 F.3d at 1052-53 (discussing differences between direct and circumstantial evidence); *Sylvester*, 453 F.3d at 902-03 (same). Additionally, Threatt offers no circumstantial evidence from which a jury might reasonably infer intentional discrimination. Threatt's affidavit is the only evidence presented describing any conduct of a sexual nature and, as noted earlier, her claims concerning Willis' few comments in 2002 and 2003 shed no light on HUD's decision to terminate her nearly four years later. She has not alleged any improper sex-based conduct by Hamilton, her first-line supervisor since 2004, or Herbert, the Washington official who approved her termination.

She also failed to demonstrate that similarly-situated male employees were treated more favorably under comparable circumstances. In her affidavit, Threatt states that:

> Male coworkers who performed the same work were able to submit work months after the deadline e.g. Michael McAfee, Michael Asque, Jaysen Alexander and still received high performance evaluations.

(Pl.'s Resp., Threatt Aff. at 3.) Despite this testimony, which may or may not be within her personal knowledge, Threatt has not established that these three individuals are similarly-situated to her for comparison purposes. *See Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002) (requiring plaintiff to identify a co-worker "who is directly comparable to [her] in all material respects," depending on the circumstances); *see also Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692-93 (7th Cir. 2005) (noting that courts consider whether the employees "(I) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications"); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *Williams v.*

*City of Chi.*, 325 F. Supp. 2d 867, 878-79 (N.D. Ill. 1998) (comparison to "others" insufficient where plaintiff does not identify individuals or "explain . . . how they are similar to her"). The Seventh Circuit has repeatedly held that "such uncorroborated generalities are insufficient to support a Title VII claim." *Oest*, 240 F.3d at 615. Accordingly, she has not set forth evidence concerning other HUD employees that might support an inference of sex discrimination with respect to her performance evaluations, termination or removal proceedings.

> 2. *Indirect Method*

*McDonnell Douglas* sets out a three-step analysis to assess unlawful discrimination in the absence of direct proof. 411 U.S. 792, 93 S. Ct. 1817; *see also Oest*, 240 F.3d at 612. First, the plaintiff must establish a prima facie case of discrimination. 411 U.S. at 802; *Oest*, 240 F.3d at 612. To do so, Threatt must show that (1) she is a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) HUD treated similarly-situated employees outside her class more favorably. *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007); *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 341 (7th Cir. 2001); *Covello v. City of Chi.*, 448 F. Supp. 2d 987, 994 (N.D. Ill. 2006). "If the plaintiff fails to establish this prima facie case, the employer is entitled to summary judgment." *Oest*, 240 F.3d at 612.

Assuming that the plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802; *Oest*, 240 F.3d at 612. If the defendant succeeds in so doing, the burden shifts back to the plaintiff to present evidence that the reason provided by the defendant is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Oest*, 240 F.3d at 612.

For reasons similar to those detailed above, Threatt's sex discrimination claim fails under the indirect method. Threatt has satisfied the first and third elements of the prima facie case, as she is a woman and HUD terminated her employment. Even if we assume that she was performing her job satisfactorily according to HUD's standards at the time of her termination,[14] she has presented no evidence that similarly-situated male employees exist, or that they received better treatment in their evaluations or during a subsequent removal process. Although she names three male co-workers in her affidavit, she does not explain how they are comparable to her. She also does not explain how she might personally know that these men were permitted to turn in assignments late and yet received high performance evaluations. (Pl.'s Resp., Threatt Aff. at 3.) Accordingly, Threatt has not established a prima facie case for disparate treatment on the basis of sex under *McDonnell Douglas*. For the above reasons, HUD is entitled to summary judgment with respect to Count I.

C.      *Count II: Sexual Harassment / Hostile Work Environment*

An employer violates Title VII when it engages in sexual harassment that creates a hostile or offensive working environment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399 (1986); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999); *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 673 (7th Cir. 1993). To make a prima facie showing on

---

[14] Other than her affidavit, Threatt provided no evidence that she was satisfactorily performing her job duties. In the present case, however, this second prong of the *McDonnell Douglas* test is not relevant. "Since [HUD] relied on [Threatt's] job performance as its explanation for firing her and because those assessing [Threatt's] performance are the same parties accused of discrimination, [Threatt] does not need to present evidence at the prima facie stage that she was performing her job satisfactorily." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979-80 (7th Cir. 2004); *Oest*, 240 F.3d at 612 n.3 (approving district court's decision to forego analysis on this element because "the people judging [plaintiff's] performance were the same she accused of discriminating against her").

Count II and survive summary judgment, Threatt must set forth evidence sufficient to infer that: "1) she was subject to unwelcome sexual harassment; 2) the harassment was based on her sex; 3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment that affected seriously the psychological well-being of the plaintiff; and 4) there is a basis for employer liability." *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004); *Cerros v. Steel Techs.*, Inc., 288 F.3d 1040, 1045 (7th Cir. 2002). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993); *see Hilt-Dyson v. City of Chi.,* 282 F.3d 456, 462-63 (7th Cir. 2002) (observing that conduct must be so severe as to alter the conditions of employment). In evaluating a hostile work environment claim, a court must consider the "totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cerros*, 288 F.3d at 1046 (quoting *Harris*, 510 U.S. at 23).

Before addressing the substance of Threatt's claim, we resolve an initial issue concerning its scope. Specifically, Threatt cannot allege a "retaliatory" hostile work environment. In other words, she cannot assert that HUD created or permitted a hostile work environment based on her prior protected activity, such as her DEEO complaints. *See, e.g., Hobbs v. City of Chi.*, No. 06-3795, 2007 WL 1810511, at *9-10 (N.D. Ill. June 21, 2007) (discussing statutory sources of these claims and concluding that harassment allegation based on prior EEOC activity was not a

separate cause of action). To the extent that Threatt attempts to assert such an independent

claim, it must fail as it is "synonymous with her retaliation claim." *Hobbs*, 2007 WL 1810511,

at *9-10. (*See* Second Am. Compl. ¶ 56 (alleging that HUD's personnel created "an unlawful

hostile work environment . . . because Plaintiff made or supported a charge of unlawful

discrimination"); Pl.'s Resp. at 7 (stating in heading that Threatt's evidence is sufficient to show

"a hostile work environment based on gender and/or retaliation").) We thus analyze her hostile

work environment claim as based on her sex.

Here, and as discussed above, Threatt's affidavit identifies but a few isolated and

relatively innocuous comments over the course of several years that could constitute sexual

harassment. She does not allege that her supervisors or co-workers made comments of a graphic,

profane or sexually-explicit nature. She does not allege that anyone propositioned her, touched

her inappropriately, or physically threatened her at any time during her employment. Reviewing

her affidavit as a whole, she describes only two comments by Willis, from 2002 and 2003, that

could be perceived as sexually harassing. (*See supra* note 12.) Her claim that Willis would "pop

up in [her] cubicle, startle [her], and engage in dialogue that was harassing" is too vague and

self-serving to serve as evidence of actionable harassment. (Pl.'s Resp., Threatt Aff. at 3.) Even

if we consider other gender-neutral comments allegedly made by Willis,[15] no reasonable jury

could conclude that his conduct amounted to subjectively and objectively abusive treatment

---

[15] Threatt states that Willis made comments such as: (1) "[Y]ou better fall in line if you want to continue to travel and enjoy the 'benefits' that come along with the job;" (2) "Who do you think you are gon' come in off the street and try to negotiate a position description. What is it that you do? We were fine, the 25 of us before you came along;" and (3) "That's Kenika Threatt. She may be sitting behind you but that doesn't mean she's got your back." (Pl.'s Resp., Threatt Aff. at 2-3.)

sufficient to alter the conditions of Threatt's employment. *See, e.g., Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (affirming dismissal of hostile work environment claim where supervisor's "conduct was confined to verbal out-bursts and never became physically threatening").

Moreover, even if we consider the litany of complaints outlined in her affidavit as well as her allegations of misconduct during the termination proceedings,[16] Threatt has failed to put forth evidence connecting HUD's actions to her sex. As the Seventh Circuit has stressed, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee" falls within a protected class. *Beamon v. Marshall & Ilsely Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). "Rather, we have held that the alleged harassment must be 'sufficiently connected to [sex]' before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's [sex]." *Id.* at 863-64 (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)); *see also Kruger*, 420 F. Supp. at 911 (noting that "it is clear that more is needed than a laundry list of incidents that may have upset Plaintiff"). Here, the disputed conduct and HUD's decisions are neither inherently sexist, nor tinged with discriminatory overtones. *See Hardin*, 167 F.3d at 345-46. Except for Willis' two questionable comments, the record demonstrates that the "'harassment' of which [Threatt] complains could just as readily been perpetrated upon a [male] person without any alteration in

---

[16] In addition to his above-described comments, Threatt states that Willis, among other things: (1) gave her low performance evaluations; (2) terminated her telework, rendering her the only employee who could not do so; (3) returned her "work products, after receiving [Hamilton's] approval, at least 7-10 times for 'grammatical' changes and other personal idiosyncrasies;" (4) requested meetings with her, without Hamilton, that lasted at least two hours; and (5) blocked her efforts to transfer out of the department. (Pl.'s Resp., Threatt Aff. at 2-3.)

its character and purpose." *Beamon*, 411 F.3d at 863; *see Graham v. Cingular Wireless LLC*, 435 F. Supp. 2d 817, 825-27 (N.D. Ill. 2006) (holding that supervisors' conduct – including negative performance review, refusal to include union representative in review meeting, requiring status reports and denying requests for training and equipment – was race-neutral). Although we construe the record before us in her favor, Threatt has failed to provide evidence from which a jury might infer unwelcome sexual harassment sufficient to constitute an objectively hostile work environment. Because she has not set forth specific facts raising a genuine issue for trial, we grant HUD's motion with respect to Count II.

    D.    *Count III: Retaliation*

Under Title VII, it is unlawful for an employer to retaliate against an employee who has opposed any discriminatory practice in the workplace or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" addressing such concerns. 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation is established when a plaintiff shows that (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action subsequent to her participation; and (3) there exists a causal connection between the advsere action and her participation in protected activity." *Oest*, 240 F.3d at 615-16; *see Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007); *Phelan*, 463 F.3d at 787; *Kruger*, 420 F. Supp. 2d at 909. Accordingly, Threatt can defeat summary judgment by presenting "direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [she] engaged in protected activity . . . and as a

result suffered the adverse employment action of which [she] complains."[17] *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see Boumehdi*, 489 F.3d at 792; *Phelan*, 463 F.3d at 787-88. As with her sex-based claims, Threatt "may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi*, 489 F.3d at 792.

The parties do not dispute that Threatt engaged in protected activity several times. She filed DEEO charges in 2002, 2004, and 2007. She apparently complained about discrimination in at least one union grievance as well. (Pl.'s Resp., Ex. 3 at 3 (summarizing union's question of whether Threatt's 2006 suspension was "in reprisal for Grievant's filing of an EEO complaint")).) The record also demonstrates that she sent several emails in April of 2006 informing HUD officials – including Willis and Herbert – of her perceived hostile work environment and her DEEO complaints. (Pl.'s Resp., Ex. 2.)

According to her 2007 DEEO Complaint,[18] Threatt's retaliation claims are based on:

---

[17] Threatt has not attempted to proceed under the indirect method of proof with respect to her retaliation claim. (Pl.'s Resp. at 3.) Even if she had raised the argument, she submitted no evidence describing similarly-situated non-complaining employees who were treated differently.

[18] As noted earlier, the allegations of Threatt's 2002 DEEO Complaint are not properly before us. Threatt's 2004 DEEO Complaint alleges that Willis charged her with 2 hours of AWOL in reprisal for her 2002 DEEO Complaint, which was accepted by HUD in October 2002. (Def.'s MSJ, Exs. 2-3.) As discussed above in Section B.1.a., the temporary AWOL charge likely does not rise to the level of an adverse action. Moreover, two years passed between her filing of the 2002 DEEO Complaint and the AWOL incident. Because Threatt has offered no evidence of discriminatory intent, we conclude that the AWOL charge does not support her retaliation claim. *See Oest*, 240 F.3d at 615 (requiring additional proof of causal nexus as the time period between a complaint and an adverse action increases). We thus focus

(1) negative performance evaluations she received from 2003 through 2006; (2) HUD's refusal to disclose evidence to Threatt during the removal proceedings; and (3) her Notice of Proposal to Remove and subsequent termination. (Def.'s MSJ, Exs. 17-18.) We thus consider whether these may constitute adverse actions and, if so, whether there is any genuine question of a nexus between these actions and her complaints of discrimination.

1. *Removal Proceedings*

We conclude that Threatt's unfounded allegations of procedural irregularities in the removal proceedings are not direct evidence of discrimination by HUD. Threatt has not adequately developed or supported her argument that HUD failed to comply with applicable regulations, including 5 U.S.C. § 4303 and 5 C.F.R. Part 432, §432.105. Without acknowledging the documentation submitted by HUD, including the 13-page Notice of Proposal to Remove, she summarily concludes that "[n]one of these mandatory, procedural hurdles were met by [HUD] in this case." (Pl.'s Resp. at 2.) For example, she complains that she "was entitled to receive a mandatory, thirty (30) days reply to the notice of her January 12, 2007 Notice of Proposal to Remove" along with a detailed explanation of her purportedly unacceptable performance. (Pl.'s Resp. at 2.) *See also* 5 C.F.R. pt. 432, § 432.105(a)(4)(I), (ii) (requiring – contrary to Threatt's assertion – that the agency provide 30 days advance notice of the *action* and a "reasonable time" to answer the proposed notice). Threatt conveniently glosses over the fact that she was given until February 23, 2007[19] to respond and was not terminated

on the allegations of the 2007 DEEO Complaint.

[19] HUD then gave Threatt additional time, through February 28, to submit additional materials in support of her claim that she had completed some of the assignments at issue. (Def.'s MSJ, Ex. 19 at 5.)

until May 15.  (Def.'s MSJ, Ex. 19.)          Although not mentioned in her response brief

opposing summary judgment, Threatt alleges in her Second Amended Complaint and 2007

DEEO Complaint that HUD refused to provide her with documents needed for her to reply to the

Notice of Proposal to Remove.  (Second Am. Compl. ¶¶ 29, 35, 37-38, 42-44; 2007 DEEO

Compl., Attached Taylor Ltr. at 2.)  She also alleges, however, that HUD faxed some

documentation on March 6, 2007.  (Second Am. Compl. ¶ 44.)  Regardless, these allegations do

not constitute evidence of any failure on HUD's part.  *Tibbs*, 469 F.3d at 663 n.2 (noting that

"allegations of a complaint are not evidence").  Threatt, moreover, has not provided any

argument or authority addressing how HUD's failure to provide documentation she requested in

the course of her removal proceeding would amount to a materially adverse action sufficient to

state a retaliation claim under Title VII.          2.     *Evaluations and Eventual*

*Termination*

Threatt alleges that her negative performance evaluations from 2003 through 2006

demonstrate HUD's retaliation, leading up to her 2007 termination.  As an initial note, "a

negative performance evaluation . . . does not in itself constitute an adverse employment action."

*Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006); *see also Volovsek*, 344

F.3d at 688 n.5 (observing that although "[r]etaliation claims often take a more generous view of

what events constitute actionable claims," some "significantly negative alteration in [her]

workplace environment" is required) (internal quotation omitted); *Grube v. Lau Indus., Inc.*, 257

F.3d 723, 729 (7th Cir. 2001) (requiring some "tangible job consequence" for poor review to

amount to adverse action).  Threatt's termination, on the other hand, plainly constitutes an

adverse employment action.  Of course, "even if negative performance evaluations or reprimands

cannot, standing alone, state a claim of discrimination, they can constitute relevant evidence of discrimination with respect to other employment actions that clearly are adverse employment actions under the statute." *Oest*, 240 F.3d at 613; *see Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). With these principles in mind, we consider the performance evaluations submitted by the parties, including: (1) Threatt's June 2004 appraisal for the review period ending February 10, 2004 (Pl.'s Resp., Ex. 5); (2) her April 2005 appraisal for the review period ending January 31, 2005 (Def.'s Reply, Ex. 2), which was grieved and amended in August 2005 (Def.'s Reply, Exs. 4-5); and (3) her June 2006 appraisal for the review period ending January 31, 2006 (Def.'s MSJ., Ex. 13), which Hamilton issued along with the OIP.

There is no evidence that the June 2004 appraisal is either an adverse action or retaliatory. Threatt has not identified any tangible consequence stemming from the June 2004 appraisal, which was apparently amended in April 2005 to a "Highly Successful" rating from an original "Fully Successful" rating. (Pl.'s Resp., Ex. 5.) In addition, the June 2004 appraisal occurred nearly two years after her 2002 DEEO Complaint and predates her August 2004 DEEO Complaint.

Threatt's April 2005 appraisal, even as amended in August 2005, might constitute an adverse action. Because she was not rated "Fully Successful" or higher for the 2005 review cycle, HUD denied her a within-grade pay increase ("WIGI") scheduled for October 2005. (Pl.'s Resp., Ex. 7.) *See, e.g., Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (noting that "the denial of a raise . . . qualifies as an adverse employment action"). Regardless, Threatt has failed to demonstrate a possible causal connection between the April 2005 appraisal and any prior protected activity. The April 2005 appraisal occurred more than six months after she filed

the October 2004 DEEO Complaint concerning the AWOL charge. *See Oest*, 240 F.3d at 616 n.8 (observing that time lapses of three, four, six, and eight months "have been determined to be too long to support an inference of retaliation"). Threatt has not presented evidence of other protected activity around that time that might permit an inference of retaliation. Accordingly, we conclude that neither the 2004 nor 2005 evaluations support Threatt's retaliation claim.

Having very carefully reviewed the parties' submissions, we have identified a potential question of fact surrounding the June 2006 appraisal but conclude that this evaluation also fails as the basis for a retaliation claim. In mid-April 2006, Threatt sent emails to her superiors complaining of her problems with management and of a hostile work environment. (Pl.'s Resp., Ex. 2.) The record shows that, shortly thereafter, Hamilton suspended Threatt for alleged misconduct in May or June 2006. She then grieved that discipline, arguing that the suspension was "in reprisal for [her] filing of an EEO complaint." (Pl.'s Resp., Ex. 3 at 3.) Threatt's 2006 appraisal is dated June 21, 2006 and was amended a week later. (Def.'s MSJ, Exs. 13, 15.) It is thus possible, though unclear in the record, that Hamilton issued the June 2006 appraisal and accompanying OIP within days after Threatt made allegations of discrimination in the disciplinary grievance. Such a close temporal proximity – if borne out by the facts – might be sufficient to support an inference of retaliation. Yet even if such an inference extended to the Notice of Proposal to Remove issued by Hamilton six months later and to Threatt's removal eleven months later, Herbert's role as the terminating official would break any causal connection.[20]

_____

[20] Threatt has not demonstrated that she engaged in protected activity within a suspiciously short time period prior to the January 2007 Notice of Proposal to Remove or her May 2007 termination. She filed this lawsuit in July 2006, well before these events. Her

In her response, Threatt claims that Herbert "simply rubber stamped" the allegedly retaliatory conduct. (*See* Pl.'s Resp. at 9, 11.) Although she utterly neglects to support this argument with evidence or legal argument, we shall briefly address it. HUD could be subject to liability if Hamilton and/or Willis exerted "singular influence" over Herbert and his decision to terminate Threatt. *Brewer*, 479 F.3d at 917; *see also Little v. Ill. Dep't Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004). "A good example of such a degree of influence . . . is where the party nominally responsible for a decision is, by virtue of [his] role in the company, totally dependent on another employee to supply the information on which to base that decision." *Brewer*, 479 F.3d at 918. In such circumstances, the employee who provides the information is deemed "the true, functional decision maker," unless the ultimate decision maker "conducts [his] own investigation into the facts relevant to the decision." *Id.* In doing so, "[i]t does not matter that in a particular situation much of the information comes from a single, potentially biased source, so long as the decision maker does not artificially . . . limit [his] investigation to information from that source." *Id.*

Here – even if Threatt had developed this argument – a jury could not conclude on the facts before us that Hamilton and/or Willis exerted such "singular influence" over Herbert. Having read Herbert's deposition in its entirety, we disagree with Threatt's mischaracterizations of his decision-making process. (Pl.'s Resp. at 6, 9 (claiming that Herbert had not reviewed documentation until preparing for his deposition).) Although Herbert relied on the "case file" of

---

termination became effective nearly two months after she filed the March 26, 2007 DEEO charge. Moreover, "mere temporal proximity is normally not enough to create an issue of fact on causation in the absence of other evidence." *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007).

documentation provided to him in approving Threatt's proposed termination, he also based his decision on Threatt's written response and oral reply, both presented with the assistance of her counsel. (Pl.'s Resp., Ex. 8, Herbert Dep. at 68-69, 90-91, 103, 119; Def.'s MSJ, Ex. 19 at 1-2.) It is undisputed that he offered her several opportunities to submit rebuttal documentation or other evidence in her defense.[21] (*See, e.g.,* Def.'s MSJ, Ex. 19 at 5.) Furthermore, after reviewing the June OIP, Herbert concluded that the standards Hamilton set forth therein for Critical Elements 1 and 2 were "backwards." (Def.'s MSJ, Ex. 19 at 4.) As a result, he declined to evaluate Threatt as to those two areas and assessed her performance for only the two remaining Critical Elements. (*Id.*) On the whole, Herbert's conduct does not suggest that he was merely Hamilton's or Willis' "cat's paw."[22] *See Shager v. Upjohn Co.*, 913 F.3d 398, 403 (7th Cir. 1990). Threatt's speculation to the contrary is not sufficient to forestall summary judgment.

---

[21] Threatt presumably would argue that these opportunities were meaningless because HUD refused to provide her certain information. (Second Am. Compl. ¶¶ 80-81.) Based on our review of Herbert's testimony, it appears that Threatt sought copies of certain reports, referred to as "CAPERs," "ACAs," and "PYRs," during the removal proceedings. (Pl.'s Resp., Ex. 8, Herbert Dep. at 122-25.) HUD maintains that Threatt failed to complete these projects for years 2003 and 2004 with respect to two counties, as ordered during the OIP period. (Def.'s MSJ, Ex. 19 at 5.) While Threatt's request for the documents implies that such reports exist and thus that she completed the work, she has not provided any evidence to us – not even her own affidavit – stating that she did so. Overall, Threatt's claim that HUD "denied her full due process of law" is unsubstantiated and fails to raise an inference of intentional discrimination. (Pl.'s Resp. at 11.)

[22] Threatt contends that Herbert's failure to speak with Hamilton prior to the termination demonstrates HUD's discriminatory motive. (Pl.'s Resp. at 5.) Both Hamilton and Herbert testified that they did not discuss the proposed removal before Herbert rendered his decision. (Pl.'s Resp., Ex. 6, Hamilton Dep. at 119, 144; Pl.'s Resp., Ex. 8, Herbert Dep. at 38.) Although this fact suggests that Herbert could have conducted a more thorough inquiry, it does not undercut the independent nature of his investigation. Herbert spoke directly with Threatt, even if not Hamilton, and thus considered information provided by both parties.

**CONCLUSION**

As described in detail above, we grant HUD's motion for summary jugdment (Docket No. 86) and dismiss this case. We also deny Threatt's Motion to Strike And/Or Deny Defendant's Motion (Docket No. 92). It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: April 16, 2008